E-FILED
Tuesday, 09 September, 2025  11:40:04 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

DERREK BLACKWELL and LISA WILLIAMS,     )
          )
     Plaintiffs,     )
          )     Case No. 4:19-cv-04019-RLH
     v.     )
          )
ILLINOIS DEPARTMENT OF CORRECTIONS,     )
          )
     Defendant.     )

## ORDER & OPINION

Now before the Court is Defendant Illinois Department of Corrections' Motion for Summary Judgment. (Doc. 51). Plaintiffs Lisa Williams and Derrek Blackwell (collectively "Plaintiffs") have responded (doc. 56), and Defendant has filed a Reply (doc. 58). This matter is fully briefed and ripe for review. For the following reasons, Defendant's (doc. 51) Motion for Summary Judgment is granted.

### BACKGROUND

Before her retirement from the Illinois Department of Corrections in 2024, Plaintiff Lisa Williams worked at the Hill Correctional Center in Galesburg, Illinois ("IDOC"). (Doc. 56 at 3). Williams rose through the ranks at HCC Galesburg during her nearly 22-year career, enjoying promotions to Correctional Lieutenant in July 2014 and again to Major Shift Supervisor in December 2019. (Doc. 51-1 at 9). On September 6, 2016, Williams filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), alleging that

Defendant IDOC had discriminated against her based on her race and sex. (Doc. 56 at 3). At the time Williams filed the charges of discrimination, her son—Plaintiff Derek Blackwell—was also employed by IDOC as a Correctional Officer at the Hill Correctional Center in Galesburg, Illinois. (Doc. 51 at 1–2).

On May 6, 2017, two Illinois State Police ("ISP") Troopers conducted a traffic stop in Galesburg, Illinois, of individuals known to the Plaintiffs. (Doc. 51 at 1–2). Not having been involved in the traffic stop, and only knowing about it because he was contacted by the individuals whom ISP stopped, Plaintiff "Blackwell arrived on scene." (Doc. 51 at 1–2). Plaintiff Blackwell created an incident, which "was recorded via camera in the squad car of the Troopers and the statements of Blackwell can be heard." (Doc. 56 at 3); (Doc. 51-3). The audio recording reveals that Blackwell started yelling profanity at the ISP Troopers, stated numerous times that he was "a department of corrections officer" at HCC Galesburg, and goaded the ISP Troopers to "[p]ull a gun out and see what happens." (Doc. 56 at 3).

As a result of this incident, the ISP Troopers contacted the Warden of Hill Correctional, Stephanie Dorethy, about Blackwell's behavior. (Doc. 56 at 4). "After discussing with the two members of ISP, Warden Dorethy passed the investigation up the chain." (Doc. 56 at 4). During the subsequent investigation, Blackwell was interviewed and gave a statement; it is disputed whether Blackwell denied the substantive portions of the incident. (Doc. 56 at 4). At the close of the IDOC investigation, Major Jason Kirsch recommended discharge of Blackwell; ultimately, this recommendation was adopted at the discretion of Warden Dorethy "[b]ecause of

the seriousness of the incident," which was reflected in "[t]he way [Blackwell] behaved with the police, [and] the things he said." (Doc. 51-6 at 27). On October 17, 2017, Blackwell was formally discharged. (Doc. 56 at 4). Notably, Blackwell challenged the discharge through his union, which entered a resolution resulting in an agreement that Blackwell would resign. (Doc. 56 at 4).

On June 10, 2019, the Court denied Defendant's Motion to Dismiss Count I of this action—finding Williams may properly maintain her retaliation claim as a relative of Blackwell. (Doc. 14 at 5–6). Plaintiffs, respectively, each allege one count of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–3(a). (Doc. 1 at 3–4). Defendant now moves for summary judgment on those counts. (Doc. 51).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant bears the burden of demonstrating that such a genuine issue of material fact exists." *Thompson Tractor Co. Inc. v. Daily Express Inc.*, No. 20-cv-2210, 2022 WL 585141, at *2 (C.D. Ill. Feb. 25, 2022) (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018)). "The parties must support their assertions that a fact cannot be or is

3

genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .' " *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. The entry of summary judgment is required "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The record is viewed in the light most favorable to the nonmovant, and the Court draws all reasonable inferences in favor of that party. *See Anderson*, 477 U.S. at 255.

## DISCUSSION

Before addressing the contours of whether this suit survives summary judgment, the Court pauses to note that Plaintiffs' Response is almost entirely devoid of any militating legal argumentation. (Doc. 56). Apart from a cursory reference to

4

causation, Plaintiffs offer only vague case summaries with little to no factual application and conclusory assertions that material disputes exist. (Doc. 56). Indeed, Defendant, in turn, correctly observes that Plaintiffs' briefing consists of conclusory, irrelevant, and underdeveloped arguments, falling short of the burden imposed at this stage. (Doc. 58 at 3–4). *See also Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("[The] arguments are wholly lacking, and we have made clear that such 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.' " (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)). Still, the Court is mindful that "[t]he ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). In other words, "Rule 56 imposes an affirmative obligation on a movant that [the Court] cannot ignore merely because a nonmovant provides no responsive arguments." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

With that threshold matter addressed, the Court will begin by identifying which facts the parties genuinely dispute. First, the facts surrounding the May 6, 2017, incident that led to Blackwell's termination are undisputed by the parties. Plaintiffs concede that Blackwell engaged in egregious misconduct during his encounter with two Illinois State Police troopers, which was captured on squad car video. (Doc. 56 at 3–4). The recording shows Blackwell repeatedly identifying himself as a correctional officer, using profanity, and making inflammatory statements such as "Pull a gun out and see what happens" and "You scared cause I am Black." (Doc.

56 at 3); (Doc. 51-3). Blackwell acknowledged multiple times that he was employed by IDOC. (Doc. 56 at 3). The ISP reported the matter to Warden Dorethy, who referred it for investigation. (Doc. 56 at 4). Major Jason Kirsch recommended discharge, and Warden Dorethy adopted that recommendation. (Doc. 56 at 4). Blackwell was formally discharged on October 17, 2017. (Doc. 51-4); (Doc. 56 at 4). These facts are not in dispute.

Plaintiffs and Defendant disagree about whether Blackwell denied the May 6, 2017, misconduct during an investigation with IDOC. Defendant, citing to an IDOC Report of Investigation, argues that "During the investigation, Blackwell was interviewed and gave a statement denying the substantive portions of the incident." (Doc. 51 at 3); (Doc. 51-7 at 2–3). Plaintiffs respond that the IDOC Report of Investigation is inadmissible and further contend that Blackwell did not, as the report suggested, deny " 'everything' during the course of the investigation." (Doc. 56 at 5). The Court agrees that the IDOC Report of Investigation is inadmissible hearsay. (*See* doc. 51-7). Under the Federal Rules of Evidence, hearsay is defined as an out-of-court statement offered by a party "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). "Such statements, unless they satisfy one of the many exceptions to the rule, are inadmissible at trial and may not be used to create a genuine issue of material fact at the summary judgment stage." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (citing Fed. R. Evid. 802). Here, because the Report of Investigation is being offered for the truth of the matter

asserted and does not meet one of the hearsay exceptions, it is inadmissible.[1] And "[i]f, as here, evidence is inadmissible hearsay, we may not consider it." *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009).

Still, this dispute—whether Blackwell denied committing the misconduct during the investigation—is immaterial. The undisputed record, including Blackwell's own admissions (doc. 56 at 3–4) and the video/audio evidence (doc. 51-3), establishes that he engaged in the underlying conduct and, as discussed below, that conduct alone was sufficient to warrant termination. Even if a jury were to credit Blackwell's assertion that he did not deny the misconduct, the outcome would not change: his discharge was independently justified. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (termination may rest on an employee's own aberrant conduct even where additional reasons are asserted).

By contrast, the October 17, 2017, Termination Notice is admissible. (Doc. 51-4). Unlike the Report of Investigation (doc. 51-7), the Termination Notice is not offered to prove the truth of each allegation of misconduct, rather it sets forth IDOC's contemporaneous rationale for discharge. *See Khungar v. Access Cmty. Health*

---

[1] More pointedly, Defendant cites the IDOC Report of Investigation to assert that Blackwell "den[ied] the substantive portions of the incident." (Doc. 51 at 3). The IDOC Report of Investigation relies in part on the ISP Field Report's narrative summary of the May 6, 2017, incident, which is an out-of-court statement being cited to for the truth of the matter asserted. (Doc. 51-7, at 4). Under Federal Rule of Evidence 805, such a statement is referred to as "double hearsay" or "hearsay-within-hearsay," requiring the statements to be covered by an applicable exception to the hearsay rule. *See* Fed. R. Evi. 805; *United States v. Severson*, 49 F.3d 268, 271 (7th Cir. 1995). The IDOC Report of Investigation was prepared in the course of business; however, the ISP Field Report's narrative summary, which the Report of Investigation relies on, is a police report. Accordingly, "third-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013). Here, the ISP Field Report lacks an independent basis for admissibility. Accordingly, for the purpose of summary judgment, the Court will not consider the IDOC Report of Investigation. (Doc. 51-7, at 2–3).

*Network*, 985 F.3d 565, 575 (7th Cir. 2021) (noting that the complaints against plaintiff were not hearsay where they were not offered to show that they engaged in the conduct complained of, but was offered to show the supervisors "state of mind when he made his recommendation" to terminate plaintiff (quoting *Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000)).

The Termination Notice documents Blackwell's unprofessional and belligerent conduct at the traffic stop, including profanity-laden remarks, racialized accusations against the troopers, his threat to "pull a gun and see what happens," his calls to the ISP district office while again identifying himself as a correctional officer, and his further statement that "if I see you, I'm gonna beat your ass." (Doc. 51-4). The Termination Notice also records Blackwell's efforts to impede the investigation by providing false or misleading information. It ties Blackwell's behavior to specific violations of IDOC's Standards of Conduct (A.D. 03.02.108), Rules of Conduct (D.R. 120), and Hill Correctional Center's Employee Orientation and Handbook—concluding that termination was warranted because his conduct compromised the trust, integrity, and professionalism required of a correctional officer. (Doc. 51-4). Simply put, it is undisputed that "Blackwell violated Department policy" (doc. 56 at 2); because of the seriousness and blatant nature of the violation, harsher penalties were deemed necessary. (Doc. 51-4). Accordingly, the Department recommended his immediate discharge from IDOC.

With that background in mind, the Court now turns to the legal framework governing retaliation under Title VII.

8

## I.   Retaliation

Under Title VII, it is itself an unlawful employment practice for an employer to discriminate against an employee on the basis that she has opposed an unlawful employment practice or otherwise made a charge of a Title VII violation. 42 U.S.C. § 2000e-3(a). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69.

To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) her employer took a materially adverse action against her; and (3) there existed a but-for causal connection between the two. *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."). Only the third element is in dispute. (Doc. 56 at 8).

## II.   Third-Party Retaliation

Citing to *Thompson v. North America Stainless, LP*, 562 U.S. 170 (2011) (ruling that a family member may sue in addition to the individual who engaged in protected activity and who was retaliated against in the form of a third-party reprisal), the Court denied Defendant's motion to dismiss and held that Williams "has stated a viable retaliation claim under Title VII." (Doc. 14 at 5). The question at this juncture

is whether Blackwell falls within Title VII's zone of interests. *See Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 917 (7th Cir. 2022). Blackwell does if Williams, Blackwell's mother, could have sued for the alleged retaliation here. Because the Court held Williams could sue (doc. 14), the question now is whether Blackwell could also sue because harming Blackwell, an employee, was the employer's intended means of retaliating against Williams. *See Lesiv*, 39 F.4th at 917.

The Seventh Circuit interprets "this inquiry as a causation requirement," thus the Court draws on the circuit's "case law regarding causation for individual claims under Title VII." *Id.* at 917–18. Blackwell must offer evidence that his mother's September 6, 2016, EEOC charge of discrimination "was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362. "The requirement of but-for causation in retaliation claims does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014). "[C]ausation can be established by circumstantial evidence." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). Nevertheless, the standard is whether the evidence as a whole would permit a reasonable factfinder to conclude that Williams' charge caused Blackwell to suffer the discharge or adverse action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

On this record, a reasonable jury could not conclude that Defendant IDOC acted to retaliate against Williams by harming Blackwell. Blackwell has offered

evidence of one materially adverse action: his termination following an IDOC investigation for his behavior on May 6, 2017, at an ISP traffic stop.[2] To meet his burden on causation and survive summary judgment, Blackwell must offer evidence of a retaliatory motive on the part of Warden Dorethy, who adopted the recommendation to terminate him made by Major Kirsch. Plaintiffs' entire argument for establishing a retaliatory motive on the part of Warden Dorethy is as follows:

> First, clearly Dorethy has a history of retaliating against those who upset her. Second, others who engaged in similar conduct (in Cannon's case, unlike Blackwell, he was actually convicted of a crime) were not treated as harshly. Third, Blackwell specifically told others that she wished she could terminate Williams as well.

(Doc. 56 at 11–12). Beginning with the Plaintiff's proffered comparators, the Court will address each in turn.

### A.    Evidence of Warden Dorethy's Motive

Turning to the comparator first, "[e]vidence that similarly situated employees outside the legally protected group were treated differently may furnish circumstantial evidence of retaliation or other unlawful motive." *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018). To be similarly situated, the comparators must be directly comparable "in all material respects," which ordinarily requires showing that they "(1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's

---

[2] As mentioned, Blackwell challenged the discharge through his union, which entered a resolution resulting in an agreement that Blackwell would resign. (Doc. 56 at 4). The Court declines to interject on whether Blackwell was actually terminated from IDOC, or whether he voluntarily left his job after the union negotiated an agreement on his behalf.

11

treatment of them.' " *Coleman v. Donahoe*, 667 F.3d 835, 846, 847 (7th Cir. 2012) (first quoting *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009); and then quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

While Plaintiffs do not attempt to flesh out their arguments fully, Plaintiffs assert that IDOC Officer Andrew Tew and IDOC Correctional Lieutenant Brian Cannon are valid comparators. (Doc. 56 at 5). The Court disagrees.

Plaintiffs have offered no evidence to support that Tew and Cannon are similarly situated comparators to Blackwell. Consequently, there are insufficient "common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). For example, while both Plaintiffs allude to an incident involving Officer Cannon, neither can say for certain who his supervisor was, what standards were applied, or what the actual conduct in question was. (Doc. 51-1 at 22–23); (Doc. 51-2 at 13–14). Furthermore, "only Williams testified regarding the outcome of the discipline for Officer Tew" (doc. 56 at 5); however, her testimony regarding Tew primarily consists of what other IDOC officers told her. *See, e.g.*, (Doc. 51-1 at 21–22) ("*They said* that Officer Tew -- and *they knew* he was an officer because of he had his jacket on . . . . And *they said* he was belligerent . . . ."). Undoubtably, as IDOC officers, Tew and Cannon were subject to the same standards as Blackwell. Yet this assumption is not supported anywhere in the record, nor does Plaintiff offer any evidence that creates

a genuine material dispute as to whether "others who engaged in similar conduct . . . were not treated as harshly" as Blackwell. (Doc. 56 at 11).

To that end, the undisputed record shows that neither Tew nor Cannon was disciplined by the same decision-maker as Blackwell. Warden Dorethy, who discharged Blackwell in October 2017, retired from Hill Correctional Center on February 16, 2020. (Doc. 51-6 at 6). Williams testified that Tew was disciplined after Blackwell's discharge, around December 31, 2020, going into January 2021. (Doc. 51-1 at 20). Thus, Tew's discipline occurred well after Dorethy's retirement. Similarly, Warden Dorthey testified that Cannon was still on his 30-day administrative suspension when she retired, meaning his discipline occurred after February 16, 2020. (Doc. 51-6 at 25). As such, Dorethy was not the Warden at Hill Correctional Center when either of Plaintiffs' asserted comparators was formally disciplined. Because neither Tew nor Cannon was disciplined by the same decision-maker as Blackwell, they are not similarly situated comparators. *See Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008); *Coleman*, 667 F.3d at 848 ("For this reason, this court generally requires a plaintiff to demonstrate at a minimum that a comparator was treated more favorably by the same decision-maker who fired the plaintiff."). Accordingly, Plaintiffs' comparator evidence does not create a genuine dispute of material fact sufficient to survive summary judgment.

Having failed to establish that Warden Dorethy had any involvement in the discipline of the two purported comparators, Plaintiffs have not produced evidence

linking her to a retaliatory motive. Absent such evidence, Plaintiffs cannot meet their burden to show that retaliation was the but-for cause of Blackwell's termination.

Finally, Plaintiffs assert that "Dorethy has a history of retaliating against those who upset her" and that she "specifically told others that she wished she could terminate Williams as well." (Doc. 56 at 11–12). But "[a] party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). *See also Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 403 (7th Cir. 2006) (rejecting reliance on testimony that community members reported an alderman's alleged animus as inadmissible hearsay insufficient to create a fact issue).

Even if these assertions were admissible, they do not establish that Warden Dorethy acted with a retaliatory motive. "[R]umor and conjecture are not enough to create a genuine issue of material fact as to whether" discharging Blackwell was pretextual, much less whether his termination was Warden Dorthey's intended means of retaliating against Williams. *Ellis*, 523 F.3d at 827. Nor do "[o]ffhand comments, isolated incidents, [or] simple teasing . . . rise to the level of" actionable retaliation. *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). Markedly, Williams remained employed and even earned a promotion to Major after Blackwell's termination, undercutting any inference that she was targeted. (Doc. 51-1 at 9).

Plaintiffs may have subjectively perceived retaliatory animus, but "[s]ubjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact." *EEOC v. Vill. At Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024). As the

14

Seventh Circuit has observed, "[i]f the subjective beliefs of plaintiffs in employment discrimination [or retaliation] cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) (citation omitted).

On this record, no reasonable jury could conclude that the termination of Blackwell was based on non-legitimate, retaliatory grounds, or was motivated by animus toward Williams, rather than his own misconduct. Indeed, Plaintiffs concede that "Clearly, Blackwell violated Department policy." (Doc. 56 at 2). The Seventh Circuit has made it clear that an employer may terminate an employee for aberrant conduct without running afoul of Title VII, even where additional reasons are asserted. *See Kidwell*, 679 F.3d at 967 ("[The plaintiff's] own aberrant actions or other intervening circumstances led to the negative responses that he incurred.").

The evidence shows that IDOC terminated Blackwell for his own misconduct, not to retaliate against his mother. *Cf. Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002) ("While Title VII protects victims of sexual harassment from being terminated in retaliation for reporting harassment, an employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The record is devoid of evidence to permit a reasonable fact finder to conclude that a retaliatory motive caused the materially adverse action here, even on summary judgment. Accordingly, Plaintiffs

15

have failed to meet their burden on causation to support the reasonable inference that they suffered materially adverse actions because of Blackwell's or Williams's protected activities under Title VII.

In short, Plaintiffs do not deny that Blackwell committed the egregious conduct that preceded his termination. (Doc. 56 at 3–4). Consistent with most Title VII retaliation claims, the question in this case is the employer's motive—the real reason for terminating Blackwell. The record, viewed in a light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, fails to show retaliatory motive on the part of Warden Dorethy. Instead, the undisputed video and audio evidence (doc. 51-3), together with the Termination Notice (doc. 51-4), establish that IDOC terminated Blackwell for his own misconduct. Plaintiffs' speculation and inadmissible statements do not create a genuine issue of material fact.

Accordingly, Defendant's (doc. 51) Motion for Summary Judgment is granted.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (doc. 51) is GRANTED. The Clerk is DIRECTED to enter Judgment in favor of Defendant Illinois Department of Corrections.

SO ORDERED.

Entered this 9th day of September 2025.

s/ Ronald L. Hanna
_____
Ronald L. Hanna
United States Magistrate Judge

16